IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| C.N.H.W., a minor, by and through her Parent and Natural Guardian, Sacora L. Wise, | ) | CIVIL ACTION NO. 9:14-1883-BHH-BM |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.).

Plaintiff applied for child's Supplemental Security Income (SSI) on October 27, 2010 (protective filing date), alleging disability as of March 1, 2009, due to difficulty paying attention, developmental delays, and a learning disability. (R.pp. 92, 154-159, 202). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on July 24, 2012. (R.pp. 11-53). The ALJ thereafter denied Plaintiff's claims in a decision issued October 10, 2012. (R.pp. 92-106). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 4-8).



Plaintiff then filed this action in United States District Court. In her Complaint, Plaintiff asserts that the ALJ erred in rendering a decision that was not supported by substantial evidence and which contained errors of law. Complaint, ECF No. 1 at 3. However, Plaintiff failed to file a Brief supporting her Complaint pursuant to Local Rule 83.VII.04, D.S.C.; therefore, there is no further explanation from the Plaintiff as to what, if any, specific claims of error are being asserted. As such, Plaintiff may be considered as having abandoned her claim. For her part, the Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial





proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff was nine (9) years old at the time of the ALJ's decision. (R.pp. 95, 154). An individual under the age of eighteen is considered disabled under the Social Security Act if that child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); see also 20 C.F.R. § 416.906. To determine whether a child is disabled, the regulations require the ALJ to consider, in sequence:

(1) whether the child is engaged in substantial gainful activity;

(2) whether the child has a "severe" impairment;[1] and

(3) whether the child has an impairment that meets, medically equals, or functionally equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"),[2] and is thus presumptively disabled.

20 C.F.R. § 416.924(b)-(d).

After a review of the evidence and testimony in the case, the ALJ determined that, at Step One, Plaintiff had not engaged in substantial gainful activity. (R.p. 95). At Step Two, the ALJ found that Plaintiff had the severe impairments of Attention Deficit Hyperactivity Disorder (ADHD)

---

[1]If the claimant's "impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then it is not severe. 20 C.F.R. § 416.924(c).

[2]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).





and a learning disorder. (R.p. 95). However, the ALJ found at Step Three that Plaintiff's impairments did not meet, medically equal, or functionally equal the criteria of any listed impairment. (R.p. 96).

As noted above, Plaintiff has failed to provide the Court with any grounds, arguments or rationale for why this decision should be reversed. Nonetheless, out of an abundance of caution, the undersigned has reviewed the decision of the ALJ, and after careful review and consideration of the case record, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

**I.**

**(Medical and School Records)**

Plaintiff has received general medical treatment from Dr. John Tiffany at Southside Pediatrics of Aiken since at least October 2009. (R.p. 301). On April 14, 2010, Plaintiff was referred to the student intervention team at her school due to concerns about her lack of academic progress. Assessments with a school psychologist and special education teacher revealed that Plaintiff performed well in reading and was noted to be cooperative, pleasant, and hard working, but that she scored below grade average in mathematics and was easily distracted. Wechsler Intelligence Scale-Fourth Edition testing revealed a verbal comprehension index score of 91, perceptual reasoning index score of 82, working memory index of 86, and processing speed index of 112, resulting in a full scale IQ of 88, which was in the low average range. Plaintiff was placed on an Individualized Education Program (IEP) to assist her with math and attention difficulties. (R.pp. 274-284).





On October 26, 2010, it was reported to Dr. Tiffany that Plaintiff was in resource classes and had a good attitude but could not pay attention. Dr. Tiffany assessed Plaintiff with Attention Deficit Disorder (ADD) and prescribed Adderall (10 mgs). (R.p. 293). On November 12, 2010, Dr. Tiffany noted that Plaintiff was well appearing, and he increased Plaintiff's Adderall dosage to 20 mgs. (R.p. 292).

On December 14, 2010, Ms. Catherine Baker (Plaintiff's teacher) reported that Plaintiff was much more laid back, more focused, and not as frustrated with her work as she had previously been. She was concerned about Plaintiff having become "flat" and noted that Plaintiff still had problems with reading comprehension and following multi-step directions. (R.p. 305). On December 16, 2010, Dr. Tiffany diagnosed Plaintiff with ADHD and decreased her Adderall dosage to 15 mgs. per day based on the reports that she was was "zoned out" on the increased dosage. (R.p. 311).

On January 12, 2011, Ms. Baker noted that since Plaintiff's last medication change, she was doing really well at staying organized and getting her work completed. Ms. Baker reported that although Plaintiff's grades were passing, she often failed tests and required the help of her resource teacher to have the test edited and receive partial credit back. (R.p. 304). On January 17, 2011, Dr. Tiffany assessed that Plaintiff was doing well and referenced reports from her teachers. He noted that Plaintiff was well appearing and continued her on Adderall (15mgs.). (R.p. 309).

On March 25, 2011, Ms. Jamie Hartsell, M.S. of Aiken Barnwell Mental Health Center, conducted a mental health evaluation. Plaintiff reported she felt bad at school and her mother reported that she was having "a lot of learning disability", which Plaintiff's mother thought was making Plaintiff depressed. It was noted that Plaintiff was soft spoken and withdrawn with a flat





affect, but had normal thought process/content; no evidence of hallucinations, delusions, or ideations; and good judgment, memory, and concentration. Ms. Hartsell assessed Plaintiff with depressive disorder and ADHD and referred her for individual and family therapy. (R.pp. 321-326). However, there is no indication that Plaintiff ever underwent the recommended treatment.

Plaintiff's April 2011 IEP indicated that she continued to perform below grade level in math calculation and applied problems, but had had "a lot of improvement" in her attention and ability to concentrate. It was noted that she could sit in her seat and pay attention without being distracted, that she was performing well in reading and reading comprehension and worked hard, helped others, and followed all school and classroom rules. While Plaintiff received resources in mathematics, social/emotional behavior, and listening comprehension, she was placed in a regular education classroom. (R.p. 337-351).

On April 14, 2011, Dr. Tiffany noted that Plaintiff was well appearing, assessed her with ADD, and wrote that she should be seen for follow up in three months. The same day, Dr. Tiffany completed a medical source statement in which he opined that Plaintiff had marked limitations in the domain of acquiring and using information and in the domain of attending and completing tasks, but that he was unable to assess if Plaintiff had any limitations in the domains of interacting and relating with others, moving about and manipulating objects, caring for herself, or health and physical well-being. (R.pp. 353-355). At the end of the 2010-2011 school year (second grade), Plaintiff received a 94 (A) in language arts, 82 (C) in mathematics, 81 (C) in reading, 89 (B) in science, and 87 (B) in social studies. (R.p. 252).

Plaintiff returned to the Aiken Barnwell Mental Health Center on August 9, 2011, where it was noted that Plaintiff's mental status examination was unremarkable. Ms. Hartsell





assessed Plaintiff with Attention Deficit Disorder (ADD) by history, rule-out adjustment disorder. (R.pp. 365-370). On August 15, 2011, Dr. Tiffany noted that Plaintiff was in third grade and well appearing.

Dr. Kenneth G. Kassebaum, a child psychiatrist, evaluated Plaintiff on November 2, 2011. He noted that Plaintiff made average grades in school, had no behavioral problems, and took Adderall which greatly improved her ADHD. While Plaintiff still had difficulty in math, she had strengths in reading and reading comprehension. A mental status examination was grossly normal, and Dr. Kassebaum assessed Plaintiff with ADHD and a learning disorder. (R.p. 362-363).

At a followup appointment with Dr. Tiffany on November 17, 2011, it was reported that Plaintiff had improved grades and was doing well. Dr. Tiffany noted she was doing well and continued her on Adderall. (R.p. 372).

On March 3, 2011, Timothy Laskis, a state agency consultant, opined that Plaintiff's impairments did not meet, equal, or functionally equal any listed impairment. (R.pp. 314-319). On April 12, 2011, Dr. Holly Hadley, a state agency psychologist, opined that Plaintiff's impairments did not meet, equal, or functionally equal any listed impairment. (R.pp. 331-336).

Plaintiff's April 2012 IEP indicated that she continued to struggle with mathematics, but had no deficits in reading fluency or reading comprehension. Although she had some difficulty with listening comprehension and working in groups, she was capable of sitting in her seat and paying attention to instruction, and her teachers indicated she was a good helper who wanted to please everyone and was a happy girl with a great work ethic. (R.p. 233-246). At the end of the 2011-2012 school year (third grade), Plaintiff had a 95 (A) in language arts, 84 (C) in mathematics, 82 (C) in reading, 88 (B) in science, and 86 (B) in social studies. (R.p. 251).





**II.**

**(Decision Analysis)**

At Step Two, the ALJ found that Plaintiff had the severe impairments of ADHD and a learning disability.[3] However, at Step Three, the ALJ determined that Plaintiff did not meet or medically equal the severity of Listings 112.02 (Organic Mental Disorders) or 112.11 (ADHD), and that there were no findings that could be substituted for the absent criteria as to these Listings or any other Listed impairment. (R.p. 96). These findings are supported by substantial evidence in the case record.

First, the ALJ's determination that Plaintiff did not meet or equal the Listing requirement for a mental disorder is supported by substantial evidence, because (as is discussed more fully hereinbelow, infra) Plaintiff does not have the necessary "marked" limitations in the required functional areas to meet either Listing 112.02 or 112.11. Hays, 907 F.2d at 1456 ["If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'"]. It is not enough that an impairment have the diagnosis of a Listed impairment, the claimant must also have the criteria shown in the Listing of that impairment. 20 C.F.R. § 416.925(d); see Sullivan, 493 U.S. at 530 ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those

[3] Although Plaintiff also complained of mild asthma and depression, these conditions were found to be non-severe. While Plaintiff had an Albuterol inhaler prescribed, there appeared to be no deficits, physical examinations almost always denoted clear/normal lungs, May 2012 pediatric progress notes described Plaintiff's asthma as mild and intermittent, and testimony from Plaintiff's mother was that Plaintiff had not even been formally diagnosed with asthma. (R.p. 95). As for depression, Plaintiff's treating pediatrician did not render such a diagnosis, Plaintiff did well in school as noted by report cards, Plaintiff had no difficulties socializing/interacting with others, and her teachers documented no compelling problems with a depressed mood, even describing her as a "happy girl." (R.p. 95-96, 235).





criteria, no matter how severely, does not qualify."]. Plaintiff did not met her burden of showing that she met or equaled all of the criteria of a Listing. See Bowen v. Yuckert, 482 U.S. 137, 146 & n. 5 (1987) [noting it is the the claimant's burden to show that his impairment is presumptively disabling and to furnish medical evidence regarding his condition].

The ALJ also specifically considered whether Plaintiff had an impairment or combination of impairments that functionally equaled the severity of the Listings. To assess functional equivalence, consideration is given to the child's level of functioning in six domains, which "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. Id. A child's impairments or combination of impairments functionally equal the listings when they result either in "marked" limitations[4] in two domains or an "extreme" limitation[5] in one domain. 20 C.F.R. § 416.926a(a).

---

[4]Generally, the Commissioner will find that a child has a "marked" limitation in a domain when the child's impairment or combination of impairments interferes seriously with her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme,'" and may arise when impairment(s) limit an activity or the interactive and cumulative effect of impairment(s) limits several activities. 20 C.F.R. § 416.926a(e)(2)(i).

[5]Generally, the Commissioner will find that the child has an "extreme" limitation in a domain when the claimant's impairment or combination of impairments interferes very seriously with her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). "'Extreme' limitation also means a limitation that is 'more than marked,'" and may arise when impairment(s) limit an activity or when the interactive and cumulative effects of impairment(s) limit several activities. Id. Although an "extreme" limitation is the rating given to the worst limitations, it does not necessarily mean a total lack or loss of ability to function. Id.





The domain of acquiring and using information involves how well a child acquires or learns information and how well she uses the information she has learned. A school-age child without an impairment should be able to learn to read, write, and do math; discuss history and science; read street signs, tell time, and make change; and ask questions and express her own ideas. 20 C.F.R. § 416.926a(g)(2)(iv). Examples of limited functioning in this domain include an inability to understand words about space, size, or time; an inability to rhyme words or the sounds in words; difficulty recalling important things learned in school the day before; difficulty solving mathematics questions or computing arithmetic answers; talking only in short, simple sentences; and having difficulty explaining what she means. 20 C.F.R. § 416.926a(g)(3).

Here, Plaintiff's academic performance is not indicative of a marked or extreme limitation in acquiring and using information, as her transcripts reflect grades during the 2011-2012 academic years ranging from A to C, showing her ability to read, discuss social studies and handle science classes, and even do math. (R.pp. 100, 251-252). Further, Plaintiff's IEPs indicate she spent 80 to 100% of her academic time in a regular classroom environment, with special education assistance when needed. (R.pp. 100, 235, 338, 343-348). Although Plaintiff does has a learning disorder, Ms. Baker indicated improvement in Plaintiff's condition after she started taking Adderall, with Plaintiff being able to concentrate, do "really well," stay organized, and get her academic work done, while Plaintiff's full-scale IQ of 88 was indicative of low average intelligence. (R.pp. 100, 264, 304). Further, a mental health evaluation from Aiken Barnwell Mental Health Center in March 2011 showed Plaintiff had normal thought process/content as well as good judgment, memory and concentration; (R.pp. 324-326); while Dr. Kassebaum's evaluation from November 2011 reflects essentially normal mental findings, that although Plaintiff had difficulty doing math she had strengths





in reading and reading comprehension, along with the notation that Plaintiff made average grades in school and had no behavioral problems. (R.pp. 362-363).

These records provide substantial evidence for the ALJ's determination that Plaintiff did not have a marked or extreme limitation in the domain of acquiring and using information. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]. Although Dr. Tiffany opined that Plaintiff had a marked limitation in the domain of acquiring and using information, the ALJ gave little weight to this opinion because it was inconsistent with Plaintiff's grades and the overall evidence of record as noted hereinabove, with the ALJ further noting that Plaintiff even did well during the summer, when she was off her medications. (R.p. 99). Dr. Tiffany's opinion is also contradicted by those of the state agency medical consultants, both of whom opined that Plaintiff had a less than marked limitation in this domain. (R.pp. 316, 333). The ALJ gave significant weight to the opinions of the child disability examiners, as they were supported by the medical evidence of record. (R.p. 106). See Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinions of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability claims]. After careful review of the record, the undersigned can find no reversible error in the ALJ's treatment of Dr. Tiffany's opinion. Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled





to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

Substantial evidence also supports the ALJ's determination that Plaintiff did not have a marked or extreme limitation in the domain of attending to and completing tasks. A school age child should normally be able to focus her attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments; change activities without distraction; and sustain attention well enough to participate in group sports and complete family chores. 20 C.F.R. § 416.926a(h)(2)(iv). Examples of limited functioning (but which do not necessarily describe a marked or extreme limitation) in this domain include being easily startled, distracted, or overreactive to sights, sounds, movements, or touch; slow to focus on or failure to complete activities of interest (e.g., games or art projects); repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks including ones she is capable of completing; requiring extra supervision to keep engage in an activity; and not being able to plan, manage time, or organize oneself in order to complete assignments or chores. 20 C.F.R. § 416.926a(h)(3).

Although the record shows that Plaintiff had some difficulty paying attention, keeping busy on her own, and completing homework, her teachers wrote that she was able to concentrate and do well when she took medication (R.pp. 101, 305). See Barnett ex rel. D.B. v. Comm'r of Soc. Sec., 573 F. App'x 461, 464 (6th Cir. 2014)[ALJ's conclusion that claimant had no marked limitation in domain of attending to and completing tasks was supported by substantial evidence where, inter alia, ADHD medication made claimant's symptoms more manageable, claimant could maintain attention when motivate, and claimant was able to complete formal psychological testing]. Plaintiff's





teachers also stated that Plaintiff was doing really well staying organized, completing her course work, and not getting frustrated with her work; (R.pp. 101, 304); while Plaintiff's education records indicate that she received good grades and was able to stay in her seat and pay attention to instruction. (R.pp. 101-102, 234, 251-252, 338).

Dr. Tiffany did opine in the questionnaire he completed in April 2011 that Plaintiff had a marked limitation in the domain of attending to and completing tasks, but the ALJ discounted this opinion based on Plaintiff's grades, good academic progress, and that she did well in the summer even when off of her medications. (R.p. 99, 106). The ALJ noted that Dr. Tiffany had himself indicated that Plaintiff was "doing well" with regard to her ADHD, and recommended that Plaintiff be on no medication for the summer. Dr. Tiffany's records also indicate that after April 2011 Plaintiff had improved grades (making A's, B's and C's) and was doing well on her medication. (R.pp. 101, 309, 372, 378, 381, 385). Further, Dr. Kassebaum noted in November 2011 that Plaintiff's mental status examination was essentially normal, that she had no behavioral problems, and assigned her a GAF of 67.[6] (R.pp. 362-363). Plaintiff's mother testified that Plaintiff did well in the summer while off her medications and was able to travel to New York with her grandmother for a few weeks without having behavioral problems. (R.pp. 33-34). Plaintiff's IEPs documented that while taking Adderall, Plaintiff could sit in her seat and pay attention without being distracted. (R.p. 338). Ms. Baker also reported that Plaintiff was doing really well, staying organized and completing her school work (R.p. 304).

---

[6]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF score of 61-70 indicates the presence of only mild symptoms of depression or difficulty in social or occupational settings. Simons v. Barnhart, No. 04-5021, 2004 WL 2633448, at **2 (4th Cir. Nov. 18, 2004).





The ALJ's decision to discount Dr. Tiffany's opinion of a marked limitation in this domain is supported by substantial evidence, as it is inconsistent with substantial evidence of record, including Dr. Tiffany's own notes. See, e.g., Craig v. Chater, 76 F.3d at 589-590; see also Burch v. Apfel, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes];Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. Hence, no grounds for this Court to reverse the decision is shown in this record. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].

Next, substantial evidence supports the ALJ's determination that Plaintiff did not have a marked or extreme limitation in the domain of interacting with and relating to others. This domain involves how well a child initiates and sustains emotional connections with others, develops and uses language, cooperates with others and complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). Examples of limitations in this functional domain include having no close friends, having difficulty playing games or sports with rules, having difficulty communicating with others, and avoiding people the child knows or becoming overly anxious or fearful of meeting new people. 20 C.F.R. § 416.926a(i)(3).

Plaintiff testified that she had a good friend, and her mother reported that Plaintiff had no difficulty interacting with teachers or other adults. (R.pp. 22, 102, 193). The April 2012 IEP





indicated that Plaintiff was a good student who tried hard, was a good helper, wanted to please others, was able to follow classroom rules, and had improved classroom behavior. (R.pp. 234-235, 338). Additionally, Plaintiff's April 2012 IEP did not warrant a functional behavioral assessment, which the ALJ noted was indicative of good social interaction. (R.p. 102). During medical and psychological assessments, Plaintiff was described as polite, pleasant, and cooperative. (R.pp. 263, 362, 368). Finally, the state agency medical consultants opined that Plaintiff had no limitation in this domain. (R.pp. 316, 333).

The domain of moving about and manipulating objects considers how well a child is able to move her body from one place to another and move and manipulate objects, including activities requiring gross and/or fine motor skills. 20 C.F.R. § 416.926a(j). The ALJ's determination that Plaintiff did not have any limitation in this domain (and thus did not have a marked or extreme limitation) is again supported by substantial evidence, as Plaintiff testified that she was able to run, walk, hop, play dodge ball, paint, ride her bike, and play videogames. (R.pp. 22-26). Plaintiff's mother reported that Plaintiff's physical abilities were not limited. (R.p. 192). School records indicated that Plaintiff met standards in physical education (R.pp. 251-252) and records from Plaintiff's pediatrician do not document any evidence of fine or gross motor deficits (R.pp. 291-301, 307-311, 372-378, 381-386). Additionally, the state agency medical consultants opined that Plaintiff had no limitations in this domain. (R.pp. 317, 334).

The next domain, caring for yourself, involves how well a child maintains a healthy emotional and physical state, including how well the child gets her physical and emotional wants and needs met in appropriate ways; how well she copes with stress and changes in environment; and whether she takes care of her own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The





ALJ's determination that Plaintiff did not have any limitation in this domain (and thus did not have a marked or extreme limitation) is supported by substantial evidence, as Plaintiff's mother reported that she had no deficits in personal care. (R.pp. 104, 194). She reported that Plaintiff was able to use zippers and buttons; complete household chores; follow safety rules; and bathe, dress, and feed herself. (R.p. 194). Plaintiff testified that she could take a bath by herself and dress herself. (R.p. 26). The ALJ observed that during the hearing Plaintiff was very quiet, polite, and respectful; maintained eye contact; appeared comfortable; and responded appropriately. (R.p. 104). The state agency medical consultants also opined that Plaintiff had less than marked limitation in this domain. (R.pp. 317, 334).

The last domain, health and physical well-being, considers any physical and mental limitations not accounted for in the domain of moving about and manipulating objects. Examples of limitations in this domain, which are not necessarily marked or extreme limitations, include generalized symptoms such as weakness, dizziness, agitation, lethargy, or psychomotor retardation; somatic complaints related to impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia); limitations in physical functioning because of treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); exacerbations from one impairment or a combination of impairments that interfere with physical functioning; and medical fragility necessitating intensive medical care to maintain a level of health and physical well-being. 20 C.F.R. § 416.926a(l)(4). Substantial evidence supports the ALJ's finding that Plaintiff did not have a marked or extreme limitation in this domain, as there is no indication in the function report completed by Plaintiff's mother that Plaintiff had any deficits regarding health and





physical well-being. (R.pp. 105, 188-195). Further, medical notes from Dr. Tiffany consistently document normal examination and there is no evidence that Plaintiff had significant or chronic health problems requiring hospitalization or on-going treatment. (R.pp. 291-301, 307-311, 372-378, 381-386).

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

Bristow Marchant
United States Magistrate Judge

April 21, 2015
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



